## Leedom *versus* Lombaert *et ux.*

1. A testamentary trustee of a fund for the use of his wife and children for life, which after the death of both was to go to the children, applied to the Orphans' Court, the children being minors without guardians, having had no notice of the application and not represented, for authority to mortgage ; after report of an auditor that his petition should be granted, a decree was so made, the trustee to give security to be approved by the court: *Held*, that a bond endorsed by the two associates "*approved*," and filed in the Orphans' Court, was conclusive evidence of approval ; and parol evidence that it was not approved by the *court* was inadmissible.

2. The bond was statutory and it is presumed that it was examined and passed on as part of the proceedings, before it was approved and filed.

3. The Acts of Assembly requiring such security are directory and the want of security will not avoid a sale or mortgage.

4. Decrees of the Orphans' Court cannot be impeached in a collateral proceeding unless for want of jurisdiction appearing on the record or for fraud.

5. That the record did not show that all the parties had notice of these proceedings would not affect the right of the trustee to execute the mortgage.

6. Parol evidence was inadmissible to impair the effect of the record.

7. The mortgage reciting the devise, the proceedings of the Orphans' Court, that the money to be raised under it was for the improvement of the trust estate, &c., was made to Forrest in fraud of the trust, as security for individual debts of the trustee to him. Nine months afterwards Forrest assigned to the plaintiff, who paid the money in the presence of the trustee, both Forrest and the trustee inducing her to believe that Forrest was a bonâ fide holder for value, that the trustee had no set-off, and that the money was not to be misapplied, &c. In a scire facias on the mortgage against the trustee, it not appearing that the *cestuis que trust* were making defence, *Held*, that he was estopped from setting up his breach of trust against a bonâ fide purchaser.

8. At the close of the evidence the court said to counsel, that as there was no evidence of notice to the plaintiff that Forrest was not a bonâ fide holder of the mortgage, &c., counsel in consequence need not address the jury ; the court afterwards submitted the question of notice to the jury: *Held*, that the statement of the judge did not preclude counsel from addressing the jury and there was no cause for reversal.

January 18th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Delaware county:* Of January Term 1876, No. 43.

This was a scire facias sur mortgage, issued March 17th 1874, by Herman Lombaert and Sarah his wife (in her right), assignee of John F. Forrest, against Augustus B. Leedom, trustee. The pleas were : *nil debit*, payment, set-off with leave, &c., *non est factum*, and two special pleas—one averring want of consideration, the other want of authority to execute the mortgage. The mortgage was dated December 4th 1872 ; it was from Augustus B. Leedom, trustee under the will of Samuel Leedom, deceased, to John F. Forrest, to secure a bond of same date conditioned for the payment of $5500, with interest in three years, with privilege to the mortgagor to sue it out on default of the payment of interest for thirty days. The mortgage was assigned September 17th 1873, to Sarah Lombaert.

[Leedom *v.* Lombaert.]

Samuel Leedom, by his will, dated April 24th 1871, and proved March 18th 1872, devised to his son, Augustus B. Leedom (the defendant), a farm, mill and water-power in Haverford township, Delaware county, with all the stock, farming utensils and personal property thereon : " In trust to manage and have full charge and control of the same, and conduct the business thereon during his natural life, for the use, benefit, and behoof of his wife Hannah, and her lawfully begotten children by my said son, Augustus B., and for the use, benefit, and behoof of the said children, after the death of said Hannah, for their support, education, and mainte- nance, and for establishing said children in business, in the discre- tion of my said son Augustus B., and out of the profits thereof, from time to time, to make such investments or purchase such other real or personal property as he may think proper, to hold for the same uses and purposes, and should my said son, Augus- tus B., die before his wife Hannah, then I do devise and bequeath said real and personal estate, so held in trust, as aforesaid, to his said wife Hannah, to hold the same to her, for her use and benefit, and for and during the term of her natural life, and from and after the death of my said son, Augustus B., and his said wife Hannah, I do give and devise and bequeath, all said real estate, and any other real estate so held in trust, as aforesaid, and all the remainder of said personal estate, to all the lawfully begotten children of my said son, Augustus B., to be equally divided between them, share and share alike ; and should any of said children be dead, leaving children, then such children to take the same share that the deceased parent would have taken, if living ; and in consideration that my said son shall undertake the trust hereby committed to him, and perform the same, he shall be allowed a reasonable support and maintenance for himself and family out of the said trust estate, for his personal services rendered."

On the 5th of July 1872, A. B. Leedom presented a petition to the Orphans' Court of Delaware county, setting out the fore- going devise *in totidem verbis ;* and further, that the real estate was much dilapidated, and required repairs to the houses and saw- mill, and that the personal estate in his hands and under his con- trol as trustee was insufficient for the improvement and repairs of the real estate, and for the purposes necessary to carry out the trust. With the petition he exhibited a true and perfect inventory and conscionable appraisement of all the personal estate whatever in his hands as trustee. The prayer was that the court would order the mortgage of the real estate, or so much thereof, and for such a sum, as to the court should appear necessary for its improve- ment and repairs, and for the purposes of the business of the trust.

William J. Harvey, Esq., was thereupon appointed auditor to take testimony and report the facts, together with his opinion.

[Leedom v. Lombaert.]

He reported that the real estate was much dilapidated, and required repairs to the houses and mills, and that the estate in the hands and under the control of the trustee was insufficient for that purpose and for the purposes of the business necessary to carry on the trust. The auditor then stated the particular repairs and improvement which were needed, and reported that to make them would require $5500. He recommended that the trustee be authorized to mortgage the real estate for that sum. He further reported that the trustee's wife and a son, above twenty years of age, appeared before him, and requested that money be borrowed on the real estate.

On the 24th of June 1872, the court ordered the trustee to mortgage the real estate described in the petition, to an amount not exceeding $5500, "for the purpose of repairing, improving, and making tenantable the mills, machinery, buildings and real estate," the "trustee giving security, to be approved by the court, in the sum of $10,000, conditioned for the faithful appropriation of the mortgage money for the benefit of the trust."

The trustee accordingly entered into a bond, dated July 6th, 1872, with M. W. Leedom and J. H. Lewis, in the sum of $11,000, reciting the decree of the court ordering the mortgage, with condition as contained in the decree. The bond was endorsed, "Augustus B. Leedom, Maris W. Leedom, and J. Howard Lewis, all approved as sureties for the within bond.

BARTINE SMITH,
THOMAS REESE,
Associate Judges."

It was filed in the Orphans' Court, July 9th 1872.

The mortgage above mentioned, made in pursuance of these proceedings, recited that the real estate mortgaged was the same devised to Augustus B. Leedom by Samuel Leedom (as before stated), the proceedings in the Orphans' Court authorizing the mortgage, and that the security required by the decree had been duly entered and approved by the Orphans' Court.

The case was tried June 2d 1876, before Clayton, P. J.

Under objection and exception, the plaintiffs gave in evidence the mortgage and the assignment. They then gave in evidence the will of Samuel Leedom. They further offered in evidence the decree of the Orphans' Court authorizing the mortgage. The defendant objected to the offer, on the ground that the *cestuis que trust* had not been made parties to the proceedings ; that those of them who were minors had no guardian and were not represented. The offer was admitted, and a bill of exceptions sealed.

They then offered the trustee's bond filed in the Orphans' Court. The defendants objected to the offer, on the ground that it purported to have been approved when the court was not in session. The offer was admitted, and a bill of exceptions sealed.

[Leedom *v.* Lombaert.]

The plaintiffs then closed.

The defendant testified that, in the summer or fall of 1872, he applied to Cochran, a money broker, to raise him money on the mortgage; he did not then furnish it. There was another mortgage on the property held by Charles Knox, for $3200, with $240 interest due upon it. After failing to get money through his own efforts, Forrest said to defendant that probably he could negotiate it, and afterwards informed him that Cochran would take the mortgage of $5500, and also the Knox mortgage, and that it would cost $700 bonus. He was to take both, and give $8000 for them. $3440 was paid to him. Defendant got in cash $1567.37, the balance of the money; he paid Cochran $900; the residue was applied to the payment of his individual debts; the $1566.37 was all the money he got in cash out of the $5500; there were $195 for Cochran's charges taken out, besides the $700. At the time of the application to the Orphans' Court, he had three minor children; neither then nor at the execution of the mortgage had they guardians.

The defendant then proposed to prove that the *cestuis que trust* were not made parties to the proceedings in the Orphans' Court, and there was no notice to them; that three of them, the owners of the fee of the mortgaged premises, were minors without guardians; also, that the bond of the trustee and the sureties had not been approved by the Orphans' Court, nor presented to that court for approval. He offered also to prove how much of the money which came into his hands out of the mortgage was applied to the improvement and repair of the mortgaged premises. The offers were severally objected to by the plaintiffs, rejected by the court, and bills of exception sealed.

On cross-examination he said that he had consented to all the payments made by Forrest, except a note for $350 to one Hawkins; he had been several times to see Cochran before he bought the mortgage; defendant told him he wanted to raise $5500 on mortgage by order of court; after some negotiation the matter finally dropped. In September 1873, after the execution of the mortgage to Forrest, he took hold of it again. He got notice from Forrest to meet Cochran at Chester, and bring Knox down; he and Knox went to Chester, to Cochran's, October 17th 1873. Forrest was to have been there, but did not come. In a day or two afterwards Cochran, Forrest and defendant met; Cochran paid Knox $3440; Cochran paid Forrest the balance in defendant's presence, after deducting expenses. Defendant said it was likely he had told Cochran to give Forrest the check—that it would be all right; he did not know that he mentioned to Cochran that he had any defence; he was aware that Forrest was negotiating with Cochran for the mortgage, for $700; he said "as much to Cochran in Chester as that Forrest did not own the

[Leedom v. Lombaert.]

mortgage ;" defendant told Cochran that the balance of the mortgage beyond the Knox mortgage was for himself; he never saw Mrs. Lombaert; he did not know whether Cochran knew how the moneys were appropriated.

In rebuttal Forrest testified that in the negotiation of this mortgage with Cochran he represented that it was his own; after some correspondence with Cochran as to negotiating both mortgages, and consultation with defendant, an agreement was made with Cochran to take both mortgages, with permission of the defendant as representative of the estate, for $8000. In the presence of defendant, Cochran gave Knox a check for the amount of his mortgage, and gave witness a check for the balance; defendant was present and raised no objection ; " it was so understood." Cochran was agent for Mrs. Lombaert; the $700 bonus was understood by the defendant; Cochran knew that it was satisfactory to him ; Leedom was present at the settlement because he was a party in interest; witness " did not understand that Cochran understood that this was the transaction of Leedom ;" Cochran did not know from witness that the money was to go to defendant; he treated only with Cochran; he had no conversation with Leedom and Cochran together. Witness held the mortgage as collateral security, and was to reimburse himself—to indemnify him for money lent both before and afterwards, and for money obtained by defendant on his security; he never notified Cochran that he held as collateral security, nor that there was a balance coming to defendant; Cochran knew nothing of the transactions between witness and defendant.

Cochran testified: that acting for Mrs. Lombaert, he bought the mortgage from Forrest, and did not know that defendant had any interest in it; defendant made no objections to the payments when the matter was closed; nothing was said by defendant about the appropriation of the money; witness had no business with defendant; in his dealings with Forrest he knew him only as the owner of the mortgage.

Maris W. Leedom, one of the sureties in the Orphans' Court bond, died April 9th 1873.

The defendants' points were :—

1. The plaintiff cannot recover in this action any sums retained as discount or bonus, or paid for commission and expenses of transfer of mortgage.

2. The plaintiff cannot recover any sums advanced or loaned by Forrest, to the mortgagor, prior to the date of the mortgage.

3. The plaintiff cannot recover any sums temporarily loaned by the mortgagee to be repaid to him out of the sale of the mortgage.

4. If the jury believe that the mortgage in suit was executed to Forrest for the purpose of raising money by the sale thereof,

then the time of issuing said mortgage was the date of transfer to Mrs. Lombaert, and she is not entitled to recover more than actually passed into the hands of the mortgagor out of the moneys furnished by her.

5. If the jury believe that the mortgage was executed to Forrest for sale by him, with the understanding that he was to be repaid out of the proceeds of sale moneys temporarily advanced by him to the mortgagor, no such moneys can be recovered in this suit.

6. No moneys can be recovered in this action, except such as were bonâ fide loaned on the mortgage for the purposes for which the mortgage was ordered to be made.

7. The plaintiffs are chargeable with notice of any defect in the mortgage in like manner as Forrest was, and cannot recover more in a suit on the same than Forrest himself could.

8. The proceedings of the Orphans' Court for the purpose of authorizing this mortgage being defective, in that the children of Augustus B. Leedom and of Hannah Leedom, and the said Hannah Leedom were not made parties thereto, no recovery can be had on the mortgage.

9. No sufficient bond having been given in the proceedings in the Orphans' Court, which purport to authorize this mortgage, the mortgagee was bound to see to the proper application of the mortgage money, and if any part of said mortgage moneys was diverted from the purposes for which the said moneys were authorized by the court to be raised, no recovery of such moneys can be had in this action, although the trustee may have consented to the diversion of such money from said purposes.

10. If the jury believe that the mortgage sued on was issued to Forrest for the purpose of sale, then in contemplation of law it was not issued until it was sold, and if Maris W. Leedom, one of the sureties in the bond, was then dead, there was no bond in existence as contemplated by the decree of the Orphans' Court, and the holder of the mortgage is not entitled to recover any part of the mortgage moneys which were diverted from the purposes for which the said mortgage moneys were authorized to be raised.

11. No attorney's commission can be collected in this suit.

12. If, when Mrs. Lombaert took an assignment of the mortgage in suit, it was manifest from an inspection of the premises that the mortgage moneys had not been expended in the repair and improvement of the same, it was her duty to inquire whether they had been advanced to the mortgagor for that purpose, and failing to make such inquiry she cannot recover in this suit any moneys not so advanced.

The court answered the points as follows :—

1. Negatived subject to the general charge.

2, 3. Affirmed if the plaintiffs or their agent had notice.

[Leedom v. Lombaert.]

4–6. Affirmed if Mrs. Lombaert had notice that Forrest was not a bonâ fide holder, otherwise not.

7. Negatived under the evidence in the case.

8–12. Negatived without qualification.

The following is a statement in the paper-book of plaintiff in error and not denied by the paper-book of defendants in error:—

"On the evidence being concluded the president judge remarked to the counsel of the defendant, in the presence of the jury, that inasmuch as there is no evidence of notice to Mr. Cochran that Forrest was not the real holder of the mortgage, but was only acting for Leedom, the trustee, he presumed that the counsel would not wish to address the jury, whereupon the counsel replied that if the court was about to take the case from the jury on the subject of notice, it was not worth while for them to address the jury, and having presented the points upon which they requested to charge, the court charged the jury as follows :—

"If you find that the purchaser of the mortgage had no notice that Forrest had not given value for and was not the bonâ fide holder of the mortgage, but was induced to believe by Leedom and Mr. Forrest, that he, Forrest, had received the mortgage in the regular way, and that Leedom had no set-off to it, the verdict should be for the plaintiff for the whole amount due.

"If the plaintiff had notice that the mortgage was held by Forrest as trustee for Leedom, and that the money paid for the mortgage by the plaintiffs was in reality the first consideration for it, then the discount becomes the bonus, and must be credited on the mortgage ; in other words, plaintiff can only recover what was paid for it. And if plaintiff knew the money was to be misapplied by Leedom, she cannot recover for so much as was so misapplied. If you find any evidence of notice to Mr. Cochran that Mr. Forrest was not the bonâ fide holder of this mortgage, you may strike off the bonus, and all moneys that were misapplied and moneys paid to Leedom before the transfer. If you do not find such notice, then find for the plaintiff."

The verdict was for the plaintiffs for $6301.17.

Subsequently to the verdict, and before judgment, the defendant's counsel, by leave of the court, filed of record a suggestion that defendant had been dismissed from his trust, and that William D. H. Serrill had been appointed his successor, had given bond, and entered upon the duties of the trust, and moved in arrest of judgment; the court overruled the motion.

"October 12th 1875, judgment on the verdict in favor of the plaintiffs, and against the defendant, for the sum of $6301.17, with interest from June 2d 1875."

The defendant took a writ of error, and assigned for error :—

1–7. The rulings of the court on the questions of evidence.

8. Submitting to the jury the question of notice to plaintiffs,

after having made the statement that there was no notice, and suggesting to counsel that there would be no occasion to address the jury, &c.

9–11. The charge of the court.

12–23. The answers to the defendant's points.

24. Entering judgment generally on the verdict.

25. " The discharge of the defendant from the trust and the appointment and qualification of his successor, having been suggested of record on June 6th 1875, the court erred in proceeding in the case after said date without the substitution of the new trustee."

*A. L. Smith* and *J. J. Lewis*, for plaintiff in error.—The mortgage was not properly authorized, notice not having been given to all the parties interested: Act of April 18th 1853, sect. 3, Pamph. L. 503, 1 Br. Purd. 1243, pl. 3. Leedom himself had no interest: Brown *v.* Williamson, 12 Casey 338; Rees *v.* Livingston, 5 Wright 113; and the minors had no notice: Smith *v.* Townsend, 8 Casey 434. The mortgage was obtained by fraud; the assignee should have made inquiry: Harper *v.* Jeffries, 5 Whart. 26; Metzgar *v.* Metzgar, 1 Rawle 227; Frantz *v.* Brown, 1 Penna. R. 257; Flynn *v.* Allen, 7 P. F. Smith 482; Faull *v.* Tinsman, 12 Casey 108; Mann *v.* Dungan, 11 S. & R. 75; Weaver *v.* Lynch, 1 Casey 449; Buchanan *v.* Wurtz, 5 Watts 151; Edgar *v.* Kline, 6 Barr 327. Leedom's silence or even false representations could not bind the owners of the land: Hill on Trustees 317, 503.

*J. B. Hinkson*, for defendants in error.—The Orphans' Court had jurisdiction to authorize the mortgage; the decree could be reversed only by appeal to the Supreme Court: Act of March 29th 1832, sect. 2, Pamph. L. 190, 2 Br. Purd. 1103, pl. 4; Torrance *v.* Torrance, 3 P. F. Smith 510; Moorehead *v.* Commonwealth, 1 Grant 215. When looking at a decree collaterally, it is presumed that every element necessary to make it was in it: Murklein *v.* Trapnell, 10 Casey 46; Colbaugh's Appeal, 12 Harris 144. That the bond was filed, was sufficient evidence that it was approved without an endorsement of approval. The mortgagor having been present at the transaction with Forrest assenting to what was done, he is estopped: McMullen *v.* Wenner, 16 S. & R. 18; Edgar *v.* Kline, 6 Barr 327: Weaver *v.* Lynch, 1 Casey 449.

Mr. Justice MERCUR delivered the opinion of the court, May 8th 1876.

The argument of the twenty-five assignments of error was well made by the counsel for the plaintiff under three questions. The first relates to the validity for any purpose of the mortgage in question.

[Leedom *v.* Lombaert.]

The plaintiff in error was the testamentary trustee of certain real estate, for the use and benefit of his wife, and their children. He applied, by petition, to the Orphans' Court of the proper county, setting forth that the said real estate was much dilapidated, and required repairs to the houses and saw-mill, and that the personal estate in his hands and under his control, as trustee, was insufficient for the improvement and repairs of said real estate, and for the purposes necessary to carry out the trust. He therewith exhibited a true and perfect inventory and conscionable appraisement of all the personal estate whatever in his hands as said trustee. He therefore prayed the court to order the mortgage of said real estate, or so much thereof, and for such sum as to the court should appear necessary for the improvement and repairs of said real estate, and for the purposes of the business of said trust. Thereupon the court appointed an auditor to take testimony and report the facts, together with his opinion. The auditor reported, fully sustaining all the averments in the petition, and recommended that the petitioner "be authorized to mortgage the said real estate to the amount of $5500, which would be in no way an injury or prejudicial to the estate." The court confirmed the report, granted the prayer of the petitioner, and decreed that he be ordered and authorized to mortgage the property to an amount not exceeding the sum recommended by the auditor, for the purposes stated in the petition, on his giving security, to be approved by the court, in the sum of $10,000, conditioned for the faithful appropriation of the mortgage-money for the benefit of the trust. The record shows the bond, duly executed by the trustee and two sureties, was filed a few days thereafter. It is endorsed approved over the signature of two of the associate judges. It is claimed that this was not sufficient evidence of the approval, and that parol evidence that it was not approved by the court was improperly rejected.

The record shows it was filed and approved. It was a statutory bond. The law presumes it was properly examined and passed upon by the court as a part of the proceedings before it was approved and filed: Hartz *v.* Commonwealth, 1 Grant 360; Boyd *v.* Commonwealth, 12 Casey 355. In Lockhart *v.* John, 7 Barr 138, it was held, that the provisions of the Acts of Assembly of 1832 and 1834, requiring administrators to give security for the faithful application of the proceeds of Orphans' Court sales, were directory merely, and the want thereof did not avoid the sale. So in Thorn's Appeal, 11 Casey 47, the giving of surety was treated as directory under the 6th and 10th sections of the Act of 18th of April 1853, 2 Purd. Dig. 1242, although in this case security was given before confirmation of the sale.

It is further objected that the record fails to show notice to all the persons interested. The Orphans' Court is a court of record.

[Leedom *v.* Lombaert.]

It has, within its jurisdiction, all the qualities and incidents of a court of record at common law. It had undoubted jurisdiction of the trustee and of the property. "Its proceedings and decrees in all matters within its jurisdiction shall not be reversed or avoided in any other court:" 2 Purd. Dig, 1103, pl. 4. In collateral suits and proceedings they must be held conclusive, unless impeached for fraud, or want of jurisdiction appearing on the record: Painter *v.* Henderson, 7 Barr 48; Welty *v.* Ruffner, 9 Id. 224; Keech *v.* Rinehart, 10 Id. 242; Dixey's Executors *v.* Laning *et al.*, 13 Wright 143. Where jurisdiction is established, the presumption is, that all directory provisions have been followed: Pittsburg *v.* Walter, 19 P. F. Smith 365. The mere omission to state on the record some of the intermediate steps cannot make its decrees void. The Common Pleas has no power to inquire into mere irregularities. Hence, the record was rightly admitted in evidence, and there was no error in rejecting all the parol evidence offered, to impair its effect. It gave to the trustee a clear right to execute a mortgage of undoubted validity, according to the terms of the decree.

Second. Under and by virtue of that decree the mortgage was executed to Forrest. It recites the decree of the court; the giving of security, and the approval thereof by the court. More than nine months thereafter it was sold and assigned by Forrest to Mrs. Lombaert, at a small discount. The assignment was made to her, and the money paid therefor by her agent, Cochran, in the presence of the mortgagor, the plaintiff in error. The evidence shows that Forrest was not the bonâ fide holder of the mortgage for full value; but the jury have found that Mrs. Lombaert had no notice that Forrest had not given value for the mortgage, and that he was not the bonâ fide owner. And they have further found that she was induced by both the mortgagor and mortgagee to believe that he, Forrest, had received the mortgage in a regular way, and that the plaintiff in error had no set-off against it; also, that she had no knowledge that the money was to be misapplied by him. Taking the whole charge, and the answers to the points, the learned judge appears very distinctly to have told the jury substantially that she could not recover any more on the mortgage than what she purchased in good faith, and without a knowledge of the manner in which it was held by Forrest.

Defence to the mortgage is made by the mortgagor alone. It is not shown by the record that the *cestuis qui trustent* make any defence; nor does it appear in the evidence that they are not fully secured by the obligation given.

Mr. Cochran acted as agent for Mrs. Lombaert in the negotiation and purchase of the mortgage. While thus acting he received no information of any fact calculated to impair its validity. Leedom had full knowledge of the negotiation between Forrest

[Leedom *v.* Lombaert.]

and Cochran while it was in progress. Yet, he answers: "I don't know that at any time I told Mr. Cochran that I had any defence or offset to this mortgage." Again, he testifies: "At the time the matter was closed, I don't know that I mentioned to him (Cochran) that I had any defence." He was not only present, but was consulted as to the discount on the mortgage, and assented to it. His whole conduct clearly led the purchaser to believe that he had no defence to the mortgage. He not only exhibited that express- ive silence, which in equity would be a fraud for him now to gainsay, but he gave positive encouragement to the purchaser to rely on the validity of the mortgage. He is now estopped from alleging his own breach of trust to the prejudice of a good faith purchaser: Weaver *v.* Lynch, 1 Casey 449.

Third. The record does not show that the trustee was discharged. It does show that after verdict, and before judgment, the counsel for plaintiff in error, by leave of the court, did suggest that he had been dismissed from his trust; but when that dismissal occurred nowhere appears. No evidence of the fact was either given or offered on the trial.

The remark made by the judge to the counsel, just before charging the jury, that there was "no evidence of notice to Mr. Cochran that Forrest was not the real holder of the mortgage, but was only acting for Leedom," did not preclude them from arguing the case then, nor from requesting leave so to do when they saw the court was about to submit the question of notice to the jury. Having omitted to do either, we do not now think the remark of the judge a sufficient cause for reversing the judgment.

Judgment affirmed.